CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
9/6/2017
JULIA C. DUDLEY, CLERK
BY: s/ JODY TURNER
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 5:16-cv-00019 ) |
| SANDRA J. FAUBER, *et al.*, | ) By: Elizabeth K. Dillon ) United States District Judge |
| Defendants. | ) |

**MEMORANDUM OPINION**

In May 2002, United American Insurance Company (UAIC) issued a life insurance policy on the life of Carl Clinton Mize, Jr. (Carl Mize or Mize). UAIC was, at best, careless with regard to its attention to the details of the policy, and over time it often provided contradictory information regarding the policy, which led both Sandra J. Fauber, Carl Mize's ex-fiancée, and Clinton Mize, Carl Mize's son, to believe that each was the sole beneficiary of the policy. Then, wiping its hands of the mess it created, UAIC filed this interpleader action (Compl., Dkt. No. 1), asking the court to determine who should receive the proceeds of the life insurance policy following Carl Mize's death.

There are two claimants to the policy's proceeds: Fauber and Clinton Mize. Both claimants submitted proposed findings of fact and conclusions of law, and a bench trial on the merits was held on April 21, 2017. This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Civil Procedure 52(a). For the following reasons, the court finds that Fauber is entitled to the proceeds of the insurance policy.

## I. FINDINGS OF FACT

Fauber and Carl Mize began a romantic relationship in 1996 and got engaged in December of that year. Fauber credibly testified that their relationship was that of "man and wife": the two lived together in a house deeded to both of them and shared responsibility for the care of Fauber's children, household chores, and financial obligations associated with the house and with Mize's medical bills. When Mize began receiving social security disability benefits, Fauber and Mize relied on those payments to pay for home expenditures.

On February 19, 2002, Mize and Fauber[1] filled out an application for a life insurance policy on Mize's life. For some unknown reason, UAIC did not receive that application.

Mize and Fauber completed a second application for life insurance on April 22, 2022. The first page of the application identified Mize as the proposed insured and Fauber as the beneficiary. It also indicated that premium notices should be sent to Fauber at the address where she lived with Mize. Mize signed the application on a line marked "Proposed Insured," and Fauber signed on the line marked "Applicant (if other than the proposed insured)." (Claim File 18, Trial Ex. 1.)[2] The application document also included an application for a discount health services plan. Mize signed that section twice on lines designated "Applicant's Signature" and "Signature of Applicant." (*Id.*)

On May 23, 2002, UAIC sent Mize and Fauber a letter enclosing the policy. (*Id.* at 79.) The letter was addressed to "CARL C MIZE JR" and "Sandra J [Fauber]—Owner." (*Id.*) The policy, number 22-1952519, listed Mize as the insured in the amount of $12,000.00 and Fauber as the owner and beneficiary with a date of issue of May 23, 2002. (*Id.* at 90.) They were

---

[1] At all times during their engagement, Fauber's last name was "Carson." She signed the relevant documents under that name. However, for convenience, the court will refer to her as Fauber.

[2] *See* Exhibit List, Dkt. No. 29.

2

advised to review the application, which was included, and contact UAIC promptly regarding any errors. (*Id*.)

UAIC briefly suspended and then reinstated the policy in October 2002, apparently to remove the discount health services plan that Mize had applied for in April. A letter from UAIC, dated October 4, 2002, notified Fauber as Owner that the Partners Discount Health Services Program was removed from the policy as requested. (*Id*. at 34.) An undated agent's document, apparently not sent to either Fauber or Mize, entitled reinstatement, listed Mize as the "Isured/Owner [sic]." (*Id.* at 20.)

From the time the policy became effective in May 2002 until May 2015, Fauber paid the policy premiums. UAIC drafted the payments on Fauber's personal bank account during that time.

In the meantime, Mize executed a power of attorney naming Fauber his attorney-in-fact in August 2011. Fauber sent that power of attorney to UAIC in April 2014.

In September 2012, UAIC sent Mize a letter that identified him as the owner of the policy and Fauber as the beneficiary. (*Id*. at 36.) In April 2014, UAIC sent Fauber a letter with information about the policy. (*Id*. at 44.)

In April 2015, Mize and Fauber ended their romantic relationship. Fauber moved in with her daughter, and Mize moved to Utah to live with his son, Clinton Mize. Shortly thereafter, Carl Mize changed his will and power of attorney, and instructed his son to change the life insurance policy so that Fauber was no longer its beneficiary.

The next month, Clinton Mize called UAIC to make the requested change to the policy. From June 2015 until Carl Mize's death in January 2016, premiums on the life insurance policy

were paid from a joint bank account that Clinton Mize set up with Carl Mize, despite Fauber's request to UAIC that drafts continue to be taken from her account.

On June 18, 2015, UAIC sent Fauber an email confirming that she remained the owner of the policy. (*Id*. at 80.)

Clinton Mize, at Carl Mize's direction, took steps to change the beneficiary designation of the life insurance policy to himself, including sending the new power of attorney to UAIC at the request of a UAIC representative. On January 14, 2016, Carl Mize received confirmation from UAIC that his beneficiary designation had been changed to Clinton Mize. (*Id*. at 116.)

On January 17, 2016, Carl Mize died. Thereafter, both Fauber and Clinton Mize made claims on the proceeds of the life insurance policy.

The Policy contains a number of relevant provisions. First, with regard to the contract documents, it provides:

> "The entire contract is this policy, the attached application and any riders."

(*Id*. at 73.)

It also contains a number of definitions:

> "The Insured – The person whose life is insured under this policy while the policy is in force."
>
> "You, Your, Owner – The current Owner of this policy, unless changed as allowed in the policy. The Owner has all the rights this policy provides unless otherwise stated in the policy."

(*Id*.)

With regard to ownership, it states:

> "The Owner has all the rights this policy provides unless otherwise stated in the policy." Additionally, "The applicant is the Owner of this policy,"

4

> . . .
>
> "The Owner may be changed by filing written notice with Us. We must approve the form and may require You to present the policy for endorsement. The change will take effect the day You sign the notice . . . ."
>
> . . .
>
> "If the Insured is living when You die, then ownership shall vest in the Insured . . . ."

(*Id*. at 74.) With regard to beneficiaries, it states:

> "While the Insured is alive, You can change the Beneficiary as often as you like."

(*Id*.)

At the time of filing of this action, Fauber resided in Virginia and Clinton Mize resided in Utah.

## II. STANDARD OF REVIEW

Rule 52(a)(1) of the Federal Rules of Civil Procedure requires that the court make specific findings of fact and state conclusions of law separately in any action tried without a jury. Specifically, the trial judge must appraise the testimony and demeanor of witnesses, as well as weigh the evidence and choose among conflicting inferences and conclusions those that seem most reasonable. *See Burgess v. Farrell Lines, Inc.*, 335 F.2d 885, 889-90 (4th Cir. 1964). In this regard, the trial court is in a unique opportunity to evaluate the credibility of witnesses and weigh the evidence accordingly. *See Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337 (3d Cir. 2013) (citing *Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 855 (1982)).

A trial court must do more than announce statements of ultimate fact, *United States ex rel. Belcon, Inc. v. Sherman Constr. Co.*, 800 F.2d 1321, 1324 (4th Cir. 1986), but is not required "to make findings on all facts presented or to make detailed evidentiary findings. . . . The

ultimate test as to the adequacy of the findings will always be whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision and whether they are supported by the evidence." *Darter v. Greenville Cmty. Hotel Corp.*, 301 F.2d 70, 75 (4th Cir. 1962).

III. CONCLUSIONS OF LAW

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1335(a), which confers jurisdiction on a court to resolve the entitlement to life insurance proceeds exceeding $500, under a life insurance policy as between two claimants who have diverse citizenship as defined in 28 U.S.C. § 1332.

In this interpleader action, each party bears the burden of establishing his or her own entitlement to the life insurance proceeds by a preponderance of the evidence. *Nationwide Mut. Ins. Co. v. Estate of Tina Fluharty*, No. 5:07-cv-140, 2009 U.S. Dist. LEXIS 10428, at *7–8 (N.D. W. Va. Feb. 10, 2009) (collecting authorities).

Whether Fauber or Clinton Mize is entitled to the proceeds of the life insurance policy turns on several issues. First, the court must determine whether the policy is void as a matter of Virginia law: that is, whether Fauber had an insurable interest in Carl Mize's life such that she could procure a policy on it,[3] and whether the end of Carl Mize and Fauber's relationship otherwise rendered the policy void. Second, the court must decide whether Carl Mize was able to substitute Clinton Mize for Fauber as the beneficiary of the life insurance policy by operation of the policy or under common law. The court will address these issues in turn.

---

[3] In his pre-trial submission, Clinton Mize appeared to argue that Fauber lacked an insurable interest in Mize's life when the policy was procured. In closing argument at trial, it appeared that Clinton Mize abandoned this argument, after realizing that no defendant would recover under a policy that was void at its inception. The court understood that he was pursuing only his argument that an insurable interest ceased to exist when the relationship between Fauber and Mize ended. Nonetheless, to the extent he continues to argue that Fauber did not have an insurable interest when the policy was issued, the court addresses this contention.

6

## A. The Policy Is Not Void.

Under Virginia Code § 38.2-301, "[n]o person shall knowingly procure or cause to be procured any insurance contract upon another individual unless the benefits under the contract are payable to (i) the insured or his personal representative or (ii) a person having an insurable interest in the insured at the time when the contract was made." Va. Code § 38.2-301(A). This statute codifies the long-established principle that, in the absence of an interest in the life of the insured, a life insurance policy is a "speculative or wager contract" on the life of another and is void as a matter of public policy. *See Conn. Mut. Life Ins. Co. v. Schaefer*, 94 U.S. 457, 460 (1876); *Orismond's Adm'x v. Jones*, 83 S.E.2d 1045, 1046 (Va. 1915). Virginia law defines an insurable interest as: "(1) in the case of individuals related closely by blood or by law, a substantial interest engendered by love and affection; [and] (2) in the life of other persons, a lawful and substantial economic interest in the life, health, and bodily safety of the insured." Va. Code § 38.2-301(B)(1)–(2).[4]

In this case, Carl Mize and Fauber were engaged when they applied for and procured the life insurance policy. Since they did not have the close familial or legal relationship required by Virginia Code § 38.2-301(B)(1), Fauber did not have an insurable interest in Mize's life by virtue of that subsection. So, whether Fauber could obtain an insurance policy on Mize's life turns on whether she had an insurable interest under Virginia Code § 38.2-301(B)(2): that is, whether Fauber had a lawful and substantial economic interest in Carl Mize's life, health, and bodily safety as Mize's fiancée.

---

[4] Virginia Code § 38.2-301(B) describes other kinds of insurable interests as well, but those result from business and other contractual relationships that do not exist here.

In *Green v. Southwestern Voluntary Ass'n*, 20 S.E.2d 694 (Va. 1942), the Supreme Court of Virginia considered whether a fiancée had an insurable interest in the life of her intended husband. Answering that question in the affirmative, the court reasoned:

> A contract of marriage is an enforceable contract, and its breach by her fiancé gives the woman an action entitling her to recover pecuniary compensation for the advantages she has lost from its non-performance. A woman has a reasonable right to expect a pecuniary benefit or advantage from the continuance of the life of the man to whom she is engaged to be married. The relation naturally inclines her to the hope that his life may be prolonged. She has a right to look forward to the realization of her perfectly natural desires and hopes.

*Id.* at 697. The court further noted that this conclusion aligned with "the spirit and purpose of the rule requiring an insurable interest," *id.*: after all, the court recognized, a fiancée's interest in the life of her intended husband is certainly more significant than that of other distant relatives whose familial relationship could give rise to an insurable interest.[5]

*Green*'s conclusion, or at least its reasoning, arguably has been called into question by two legislative developments.[6] The court need not delve deeply into whether or not *Green* is still good law, though, because the court does not rely on the fact of the engagement to conclude that Fauber had an insurance interest in Mize's life. Instead, the court concludes that Fauber had an insurable interest because she has shown a substantial pecuniary interest in Mize's life, health,

---

[5] As stated in *Green*, "[c]ertainly a fiancée has as great an interest in her intended husband as his cousin related to the fourth degree, a relationship authorized in the statute relied on by the defendant." *Id.* at 697. It is not clear to which statute the court was referring.

[6] First, in 1968, the Virginia General Assembly abrogated the cause of action for breach of promise to marry. *McGrath v. Dockendorf*, 793 S.E.2d 336, 338 (Va. 2016); Va. Code § 8.01-220 (establishing that "no civil action shall lie or be maintained in this Commonwealth for . . . breach of promise to marry"). Second, *Green* was decided before the General Assembly passed Virginia Code § 38.2-301, which limits the insurable interest based on a "substantial interest engendered by love and affection" to cases where the parties are closely related by blood or law. Va. Code § 38.2-301(B)(1). Thus, to the extent *Green*'s analysis was based on (1) the assumption that a fiancée could expect to sue her ex-fiancé if he broke off their engagement or (2) a fiancée's love for her intended husband, that analysis may no longer apply.

and bodily safety when she obtained the life insurance policy. *See* Va. Code § 38.2-301(B)(2); Peter N. Swisher, *The Insurable Interest Requirement For Life Insurance: A Critical Reassessment*, 53 Drake L. Rev. 479, 510 (2005) (noting that "in order to avoid the possibility of illegal wagering contracts and questionable archaic doctrines of economic dependency for fiancés and fiancées, the better-reasoned view today would be to require present proof of economic dependency or some other valid pecuniary interest on the part of the fiancé or fiancée in the life of the other").

The evidence presented at trial established that in April 2002 Fauber and Carl Mize were living together in a house deeded to both of them and had been living together for several years. The two shared responsibilities for parental duties and for the maintenance of the house. Fauber testified that Mize helped raise her children, and that she cooked, cleaned, and did the dishes. The two also shared bills, with Fauber assuming primary responsibility for utilities and grocery bills and Carl Mize paying for the mortgage and other expenditures. After Mize was awarded social security disability benefits, he and Fauber opened a joint bank account so that Fauber could use the disability income to pay for home expenditures. In short, Fauber and Mize's relationship was not a casual, roommate-type relationship: it was, as Fauber characterized it, as though she and Mize lived "as husband and wife." Since Fauber relied heavily on Mize to fund and manage their joint household, the court concludes that Fauber had an insurable interest in Mize's life when they purchased the insurance policy.

Because the relationship that gave rise to that insurable interest ended in 2015, the court also must decide what effect, if any, the end of their relationship had on the policy. Clinton Mize claims that Fauber's insurable interest in Mize's life ended when she terminated her romantic relationship with Mize and moved out of their home, and therefore she cannot recover the value

of the policy. He argues that the interest does not vest until the time of the insured's death, and she had no interest at that time.

Although it is true that Fauber no longer had an insurable interest in Carl Mize's life when Mize died in January 2016, that fact does not render the policy void or unenforceable. On its face, Virginia Code § 38.2-301(A) requires the beneficiary of a life insurance policy to have "an insurable interest in the insured *at the time when the contract was made*." (emphasis added). Thus, the relevant time for determining the validity of the policy is when the policy was procured—not when the benefit of the policy was realized. As discussed above, Fauber had an insurable interest at the time she procured the policy. That fact alone establishes that the policy was not void; whether the insurable interest came to an end before Carl Mize's death is immaterial to the court's analysis.

Clinton Mize urges this court to apply equitable principles and reach a different conclusion. He argues that because the Supreme Court of Virginia has not determined whether the end of an insurable interest voids a life insurance policy under Virginia Code § 38.2-301(A), the court should interpret the statute with an eye toward equity. In support of his claim that an equitable interpretation of this statute would terminate Fauber's beneficiary status at the end of her insurable interest, Clinton Mize points to Virginia Code § 20-111.1, which he claims automatically terminates a beneficiary designation in favor of an ex-spouse in cases of divorce or annulment. Interpreting Virginia Code § 38.2-301 to lack a similar beneficiary termination mechanism, in Clinton Mize's estimation, would favor ordinary relationships and engagements over marriages.

The court disagrees with Clinton Mize. First, the fact that the Supreme Court of Virginia has not spoken on this issue does not mean that this court has free reign to interpret Virginia

Code § 38.2-301 however it sees fit. When interpreting a statute on which the Supreme Court of Virginia has not spoken, this court must interpret the statute as it believes the Supreme Court of Virginia would. *See Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999). That means that this court, like the Supreme Court of Virginia, must try to effectuate legislative intent by giving effect to the plain meaning of the words used in the statute. *Riverside Owner, L.L.C. v. City of Richmond*, 711 S.E.2d 533, 537 (Va. 2011); *Antisdel v. Ashby*, 688 S.E.2d 163, 166 (Va. 2010). As discussed, the plain language of Virginia Code § 38.2-301 establishes that whether a life insurance policy is valid turns on whether the beneficiary had an insurable interest in the life of the insured when the contract was made. Thus, this court believes the Supreme Court of Virginia would reject the interpretation Clinton Mize urges here.

Moreover, the court disagrees with Clinton Mize's interpretation of Virginia Code § 20-111.1. That statute provides that:

> upon the entry of a decree of annulment or divorce . . . any revocable beneficiary designation contained in a then existing written contract owned by one party that provides for the payment of any death benefit to the other party is revoked. A death benefit prevented from passing to a former spouse by this section shall be paid as if the former spouse has predeceased the decedent.

*Id.* This is not a situation, like the one described in the statute, where an individual owns a contract that provides for a benefit to the other—as is discussed more fully below, Fauber owns the policy for her own benefit. Accordingly, Virginia Code § 20-111.1 would not compel a different result here even if Fauber and Carl Mize were married, and allowing the policy to continue past the end of Fauber's insurable interest does not create tension with this statute as Clinton Mize suggests.

For these reasons, the court finds that the end of Fauber and Carl Mize's relationship did not affect the policy. Because Fauber had an insurable interest in Carl Mize's life when the life insurance was procured, the policy is not void.

**B. Fauber Is the Beneficiary of the Policy.**

Having found that the life insurance policy at issue is valid, the court now turns to the central issue of this case: whether Fauber or Clinton Mize is the policy's beneficiary. There is no dispute that Fauber was the beneficiary when she and Carl Mize procured the policy. So, in order to decide whether Clinton Mize became the beneficiary, the court must determine how a beneficiary may be changed under the terms of the policy, whether Carl Mize could avail himself of the relevant provisions, and whether common law authorized him to change the beneficiary designation. As discussed below, the court concludes that only Fauber was authorized to change the ownership of the policy and the beneficiary designation and that she never did either. Thus, Fauber remains the beneficiary of the policy.

**1. The policy allows only Fauber, its owner, to change the beneficiary designation.**

The court looks first to the language of the policy to determine by whom, and under what conditions, the beneficiary of the policy could be changed. An insurance policy is a contract, and, like any other contract, it should be construed in accordance with Virginia's principles of contract interpretation. *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir. 2005); *Graphic Arts Mut. Ins. Co. v. C.W. Warthen Co.*, 397 S.E.2d 876, 877 (Va. 1990). Where the language of a contract is unambiguous—that is, where it is capable of only one reasonable meaning, *Res. Bankshares*, 407 F.3d at 631; *Salzi v. Va. Farm Bureau Mut. Ins. Co.*, 556 S.E.2d 758, 760 (Va. 2002)—the court should "interpret the contract by examining the language explicitly contained therein," *Graphic Arts*, 397 S.E.2d at 877, and by giving the words

used "their ordinary and customary meaning" wherever possible. *Sch. Bd. of Newport News v. Commonwealth*, 689 S.E.2d 731, 735 (Va. 2010) (quoting *Graphic Arts*, 397 S.E.2d at 877).

As noted in the court's findings of fact, the policy provides that "While the Insured is alive, You [*i.e.*, the Owner] can change the Beneficiary as often as You like. . . . To change a Beneficiary, file a satisfactory written request with Us. Once We record it, the change will take effect." (Claim File at 74.) The policy provides no other mechanism for changing its beneficiary designation. So, by the policy's plain language, the beneficiary can be changed only if the owner submits a proper written request to do so.

Likewise, the policy also provides for changes of ownership (*id.* at 74), but, as with the the beneficiary designation, only the owner may change the ownership of the policy, and he or she must do so by filing a written notice and presenting the policy for endorsement, if UAIC requests.

In short, the beneficiary of the policy could change only if the owner (1) changed the beneficiary designation directly, or (2) transferred ownership to another owner who could change the beneficiary designation. It is undisputed that Fauber never took any action to change the beneficiary designation or ownership of the policy, and that Carl Mize did. So, in order to decide whether Clinton Mize could have become the beneficiary of the life insurance policy, the court must decide who was the original owner. The parties dispute this point, and both received indications from UAIC representatives that they were the policy's owner at various points. Again, the court must resolve this issue by applying Virginia's rules of contract interpretation.

Per the terms of the policy, "[t]he entire contract is [the] policy itself, the attached application and any riders." (*Id.* at 73.) The application attached to the policy, which is incorporated into the contract by that provision, identifies Mize as the proposed insured and

13

Fauber as the owner and beneficiary. (*Id.* at 76.) Thus, the contract indicates, on its face, that Fauber was the owner of the policy.

At trial, Clinton Mize relied heavily on the April 22, 2002 life insurance application filled out by Fauber and Mize. That document included an application for a discount health services program, in addition to the life insurance application. Although Mize signed the life insurance application as the proposed insured and Fauber signed as the applicant, Mize signed the discount health services application on lines designated for "Applicant's Signature" and "Signature of Applicant." (*Id.* at 18.) Therefore, Clinton Mize argued, it appears that his father was the applicant for the life insurance policy.[7] The court disagrees. Even assuming that Mize's signatures on the discount health services plan section would contradict Fauber's signatures as applicant for the policy itself, the application attached to the policy—the one incorporated by the policy's language—does not include the discount health services plan application. As discussed, the application attached to the actual policy clearly identifies Fauber as the owner. (*See id.* at 76.) Since the court may not look beyond the plain language of the contract in the absence of any ambiguity, and because the application document on which Clinton Mize relies was not attached to the policy, the court may not consider the import of that document.

Having found that Fauber was the original owner of the policy, it is clear that she remains its beneficiary. As discussed above, only the owner of the policy could change the beneficiary designation. Fauber presented evidence at trial that she never made Clinton Mize the beneficiary. Accordingly, she has carried her burden of showing that she remains the beneficiary of the policy. Likewise, Clinton Mize has failed to carry his burden. To be sure, Clinton Mize

---

[7] At trial, Clinton Mize suggested for the first time that Fauber and Mize may have been co-owners of the life insurance policy. Although there was certainly contradictory evidence in UAIC letters and communications as to who owned the policy, there is no evidence in the record that Fauber and Mize were co-owners.

14

offered evidence at trial that at least some UAIC representatives thought Carl Mize was the owner of the policy, and that he worked with UAIC to change the beneficiary designation at his father's instruction. But Carl Mize's attempts to change the policy cannot have been effective if he never became the policy's owner. Clinton Mize offered no evidence that Fauber designated him as the beneficiary of the policy or transferred ownership to Carl Mize so that Carl Mize could designate him as its beneficiary. Accordingly, Clinton Mize has not carried his burden of showing that he is entitled to the proceeds of the policy.

### 2. Neither common law principles nor principles of equity alter the court's conclusion that Fauber is the policy's beneficiary.

Clinton Mize also argues that, even if Mize failed to take all the steps necessary to change the beneficiary designation, the court should credit his attempts to do so under the doctrine of substantial compliance. The substantial compliance doctrine allows the court, as a matter of equity, to look past technical non-compliance with the change-of-beneficiary provisions of a policy in order to effectuate a policy owner's clearly expressed intent to change his beneficiary. *United Servs. Life Ins. Co. v. Moss*, 303 F. Supp. 72, 75 (W.D. Va. 1969). Application of the doctrine requires proof of two elements: (1) that the insured intended to change the beneficiary of his policy, and (2) that he did everything to the best of his ability to effect the change. *Id.*; *Dennis v. Aetna Life Ins. and Annuity Co.*, 873 F. Supp. 1000, 1006 (E.D. Va. 1995) ("[M]ost jurisdictions apply the equitable principle that a policy owner's attempt to change the beneficiary should be allowed when the owner does everything within his power to effectuate the change.") (collecting cases).

In his proposed findings of fact and conclusions of law, Clinton Mize pointed the court to various cases applying the substantial compliance doctrine to decide whether to salvage the intended beneficiary designation despite technical noncompliance with the requirements of the

policy at issue. *See Phoenix Mut. Life Ins. Co. v. Adams*, 30 F.3d 554, 556 (4th Cir. 1994); *Metropolitan Life Ins. Co. v. Gorman-Hubka*, No. 1:15-cv-1200, 159 F. Supp. 3d 668, 674–75 (E.D. Va. Feb. 3, 2016); *Moss*, 303 F. Supp. at 74; *Fidelity & Deposit Co. v. Moore*, 14 S.E.2d 307, 309 (Va. 1941). However, in each of those cases, the individual whose intent was being considered had the power to change the beneficiary designation at issue but failed to do so. While there can be little doubt that Carl Mize wanted to make Clinton Mize his beneficiary and that he did everything in his power to make that change, Carl Mize was not the owner of the policy and therefore had no authority to change the beneficiary designation. Applying the substantial compliance test to effectuate Mize's intent over Fauber's—the owner of the policy and the one in charge of beneficiary designations—would not be the equitable result for which the test was created. Accordingly, the court declines to apply that test here.

## IV. CONCLUSION

For the foregoing reasons, the court concludes that Fauber is the proper beneficiary of the life insurance policy issued by UAIC insuring Carl Mize's life and that she is entitled to the entire proceeds of that policy. Clinton Mize is not entitled to any of the proceeds of the policy. An appropriate order entering judgment in Fauber's favor will be entered.

Entered: September 6, 2017.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge